UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
BARBARA MCCOY,

        Plaintiff,

   -v-                                  No.  11 Civ. 2575 (LTS)

MORNINGSIDE AT HOME and
AGING IN AMERICA,

        Defendants.
-------------------------------------------------------x

### Memorandum Opinion and Order

        Plaintiff Barbara McCoy ("Plaintiff"), who previously worked at Morningside at Home as a Home Health Aide ("HHA"), brings this action against Morningside at Home ("Morningside") and Aging in America ("Aging") (collectively, "Defendants").  Plaintiff alleges that Defendants discriminated against her on the basis of her disabilities (bipolar disorder and back problems) in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12112 et seq. (the "ADA"); that Defendants retaliated against her for complaining about her physical disability in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII");[1] that Defendants discriminated against her on the basis of her religion in violation of Title VII; and that Defendants retaliated against her for complaining to her employer about unpaid wages, in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA")

---

[1]    Plaintiff's allegation of retaliation in response to her claim of back problems is made for the first time in Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment.  (See Pl. Opp. at 5.)

and the New York Labor Law §§ 190 et seq. ("NYLL").[2]  Plaintiff seeks declaratory, equitable, and monetary relief.

Defendants move, pursuant to Federal Rule of Civil Procedure 56, for summary judgment on all of Plaintiff's claims.  The Court has jurisdiction of Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 1367.  The Court has thoroughly reviewed all of the parties' submissions.  For the following reasons, the Court grants the motion for summary judgment as to Plaintiff's ADA, Title VII, and FLSA claims, and declines to exercise supplemental jurisdiction over any claim by Plaintiff brought under the NYLL.

BACKGROUND

The following facts are drawn from the parties' submissions and are undisputed unless otherwise indicated.[3]  Plaintiff McCoy worked for Defendant Morningside, a not-for-profit licensed home care service agency, as an HHA, caring for elderly patients from April 2009 to January 15, 2010.  (Def. 56.1 St. ¶¶ 1-5.)  Defendant Aging is a not-for-profit organization and is the parent company to Morningside.  (Id. ¶ 2.)  As an HHA, Plaintiff's duties included assisting her patients with the maintenance of good personal hygiene, such as by helping patients

---

[2]   The Complaint does not clearly indicate the statutes under which Plaintiff asserts her claim of retaliation for complaining about unpaid wages, but all parties appear to assume that the claim is asserted under both the FLSA and the New York Labor Law.  Because Plaintiff originally brought this action as a pro se plaintiff, the Court interprets the Complaint in the light most favorable to Plaintiff and considers the claim to be asserted under both the FLSA and the New York Labor Law.

[3]   Facts recited as undisputed are identified as such in the parties' statements pursuant to S.D.N.Y. Local Civil Rule 56.1 or drawn from evidence as to which there is no non-conclusory contrary factual proffer.  Citations to the parties' respective Local Civil Rule 56.1 Statements ("Def. 56.1 St." or "Pl. 56.1 St.") incorporate by reference the parties' citations to underlying evidentiary submissions.

bathe, dress, and get on and off of the toilet or use a bedpan, as well as assisting with daily household tasks and accompanying patients to medical appointments.  (Id. ¶ 25.)  Reinaldo "Ray" Melendez was Plaintiff's direct supervisor and worked as the HHA Coordinator responsible for creating each HHA's schedule of patient assignments.  (Id. ¶ 6.)

Plaintiff alleges that Defendants discriminated against her on the basis of her disabilities, her bipolar disorder and her "back problems."  (Def. 56.1 St. ¶ 9.)  Melendez testified that he was not aware that Plaintiff had "any disability which would affect her ability to do her job."  (Id. ¶ 12.)  Moreover, Defendants assert that Plaintiff never informed anyone at Morningside that she suffered from bipolar disorder.  (Id. ¶ 14.)  As for whether Morningside knew of Plaintiff's back problems, Melendez testified that, although Plaintiff took a two-week leave from work during May and June 2009, due to a back injury, he did not know of the reasons for the leave.  (Id. ¶¶ 30-31.)  When she returned to work, Plaintiff submitted a doctor's note stating that she could perform her job without restrictions and resumed her full duties.  (Id. ¶¶ 31-32.)  Plaintiff does not dispute that she did not request accommodation for any disability.  (Id. ¶¶ 31, 33.)  Plaintiff admits that she had "indicated to defendant that [she] had no ailments" and that "according to what they had on paper," she did not have any "back problem" and could work without restrictions.  (Pl. Aff. ¶ 14; Hoey Reply Dec., Exh. 3 at 183.)

Plaintiff asserts that, during her last assignment (with Patient DD) in December 2009, she informed Melendez that she was "hurting her back from [Patient DD]," but "he didn't say anything," and that she also informed Supervising Nurse Tina Ford about this back injury. (Pl. 56.1 St. ¶¶ 12, 45; Pl. Aff. ¶¶ 14-15; Hoey Reply Dec., Exh. 3 at 184.)  However, in January 2010, Plaintiff submitted a pre-employment health exam form to Morningside, indicating that she had no "psychiatric or behavior disorder[s]," "back problems," or any of the other health

issues enumerated on the form.  (Def. 56.1 St. ¶¶ 42-44.)

      Plaintiff further alleges that Defendants discriminated against her on the basis of her religion.  (Id. ¶ 10.)  However, there is no evidence that anyone at Morningside ever made negative or disparaging comments to Plaintiff about her religion (Christianity) and Plaintiff testified that she believes that she was hired because she was a Christian.  (Id. ¶¶ 16-17.)  In June 2009, Plaintiff requested that Melendez reassign her because her patient at the time had a dirty home and other people living there were "getting high" and "us[ing] profanity," which allegedly offended Plaintiff's religious beliefs.  (Id. ¶¶ 34-36.)  Morningside subsequently assigned Plaintiff to another patient.

      Plaintiff also alleges that Defendants retaliated against her for complaining about unpaid wages and, in her opposition to this motion, she alleges that Defendants retaliated against her for complaining about her disability (back problems).  (Id. ¶ 11; Pl. Opp. at 5.)  During the last week of December 2009, Melendez assigned Plaintiff to work with Patient DD.  The assignment was a live-in placement, which meant that Plaintiff was at the patient's home twenty-four hours a day, five days a week.  (Id. ¶¶ 38-40.)  On January 14, 2010, while at the patient's home, Plaintiff called Morningside and spoke with Melendez to complain of a paycheck that was missing wages equivalent to one day's work.  (Id. ¶¶ 46-47.)  Melendez told her that she needed to raise the issue with Morningside's Office Manager Marcias Asiah, who was away from the office that day.  (Id. ¶¶ 8, 48, 51.)  After Plaintiff continued to call the agency regarding her unpaid wages, Melendez arranged for Plaintiff to speak with Asiah.  (Id. ¶ 51.)  Asiah told Plaintiff that she would investigate the issue and update the Plaintiff.  (Id. ¶ 52.)  Defendants assert that Plaintiff was "angry" and had "yelled" and "used profanity" during these calls to such an extent that, at one point, Melendez reminded Plaintiff that she was on duty and that it was

unprofessional for her to make angry phone calls from a patient's home.  (Id. ¶¶ 48-49.)  Plaintiff acknowledges that she "had a big mouth," but denies that she yelled or used any profanity.  (Id. ¶ 58; Pl. 56.1 St. ¶¶ 48-49.)

Melendez told Plaintiff that he was sending in another HHA to replace her at Patient DD's home on January 15, 2010, and that Plaintiff needed to come to Morningside's office for a meeting to discuss her behavior.  (Def. 56.1 St. ¶¶ 53-54.)  Plaintiff never went to the office to meet with Melendez.  (Id. ¶ 55.)  Plaintiff asserts, however, that she did not appear because Melendez told her to call before going in, and no one at Morningside answered or returned her repeated calls.  (Pl. 56.1 St. ¶ 53.)  The parties agree that no one at Morningside ever told Plaintiff that she had been terminated, but Morningside did not call her for another assignment and Plaintiff did not work with Morningside again after her assignment with Patient DD.  (Id. ¶ 57; Def. 56.1 St. ¶¶ 56-57.)

According to Defendants, after determining the cause of the paycheck error, Morningside paid all of Plaintiff's wages, but Plaintiff asserts that she was paid only because she filed suit in small claims court concerning her unpaid wages in late January 2010.  (Def. 56.1 St. ¶ 59; Pl. 56.1 St. ¶ 59.)  On January 26, 2010, Plaintiff filed a Charge of Discrimination with the New York State Division of Human Rights and the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging discrimination on the basis of her race in violation of the New York State Human Rights Law ("NYSHRL") and Title VII of the Civil Rights Act of 1964 ("Title VII") and on the basis of her disabilities in violation of the NYSHRL and the Americans with Disabilities Act ("ADA").  (Def. 56.1 St. ¶ 60.)  The charge did not mention religious discrimination.  In April 2011, Plaintiff commenced this action against Defendants pursuant to the ADA, Title VII, the Fair Labor Standards Act ("FLSA") and the New York Labor Law.

<u>DISCUSSION</u>

Summary judgment is to be granted in favor of a moving party if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  <u>See</u> Fed. R. Civ. P. 56(a); <u>see also</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986).  The moving party bears the burden of establishing that there is no genuine issue of material fact.  <u>See</u> <u>Anderson</u>, 477 U.S. at 256.  A fact is considered material if it "might affect the outcome of the suit under the governing law," and an issue of fact is a genuine one where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  <u>Id.</u> at 248.  The Court must "constru[e] the evidence in the light most favorable to the non-moving party and draw[ ] all reasonable inferences in [that party's] favor" in order to resolve any ambiguities.  <u>Maraschiello v. City of Buffalo Police Dept.</u>, 709 F.3d 87, 92 (2d Cir. 2013) (internal quotation marks and citations omitted); <u>see also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986).  Nevertheless, Federal Rule of Civil Procedure 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which the party will bear the burden of proof at trial."  <u>Celotex Corp.</u>, 477 U.S. at 322.  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts" and "cannot rely on conclusory allegations or unsubstantiated speculation."  <u>Barounis v. New York City Police Dept.</u>, No. 10 Civ. 2631(SAS), 2012 WL 6194190 at *5 (S.D.N.Y. Dec. 12, 2012) (internal quotation marks and citations omitted).

<u>Americans with Disabilities Act  Claims</u>

"Claims alleging disability discrimination in violation of the ADA are subject to the burden-shifting analysis originally established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)."  McMillan v. City of New York, 711 F.3d 120, 125 (2d Cir. 2013) (citing McBride v. BIC Consumer Prods. Mfg. Co., 583 F.3d 92, 96 (2d Cir. 2009)). This analysis requires that: "[a] plaintiff must establish a prima facie case; the employer must offer through the introduction of admissible evidence a legitimate non-discriminatory reason for the discharge [or other form of discriminatory action]; and the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is a pretext."  Sista v. CDC Ixis North America, Inc., 445 F.3d 161, 169 (2d Cir. 2006) (citing Heyman v. Queens Vill. Comm. for Mental Health for Jamaica Cmty. Adolescent Program, 198 F.3d 68, 72 (2d Cir. 1999)).

Plaintiff alleges that Defendants discriminated against her on the basis of her disabilities by subjecting her to an adverse employment action – specifically, termination of Plaintiff's employment – and failing to provide reasonable accommodations.


Adverse Employment Action Claim

For a plaintiff to establish a prima facie claim under the ADA based on an adverse employment action, a plaintiff must show by a preponderance of the evidence that:

> (1) [the plaintiff's] employer is subject to the ADA; (2) [the plaintiff] was disabled within the meaning of the ADA; (3) [the plaintiff] was otherwise qualified to perform the essential functions of [her] job, with or without reasonable accommodation; and (4) [the plaintiff] suffered adverse employment action because of [her] disability.

McMillan, 711 F.3d at 125 (quoting Sista, 445 F.3d at 169); see also Ryan v. Grae & Rybicki, P.C., 135 F.3d 867, 869-70 (2d Cir. 1998).  The fourth element, causation, necessarily

incorporates an inquiry as to whether the employer had notice of the plaintiff's disability.  See, e.g., Pacenza v. IBM Corp., No. 04 Civ. 5831(PGG), 2009 WL 890060, at *10 (S.D.N.Y., Apr. 2, 2009), aff'd, 363 F. App'x 128 (2d Cir. 2010) (since his employer lacked knowledge of his alleged disability, the plaintiff failed to satisfy the fourth element because, "if [an employer was] truly unaware that . . . a disability existed, it would be impossible for [an] [employment] decision to have been based, even in part, on respondent's disability") (quoting Raytheon Co. v. Hernandez, 540 U.S. 44, 55, n. 7 (2003)); see also, Watson v. Arts & Entertainment Television Network, No. 04 Civ. 1932(HBP), 2008 WL 793596, at *10 (S.D.N.Y. Mar. 26, 2008), aff'd, 352 F. App'x 475 (2d Cir. 2009) ("notice to the employer of the claimed disability is an essential element of a wrongful termination case under the ADA"); Thomsen v. Stanec, 785 F. Supp. 2d 20, 23 (W.D.N.Y. 2011), aff'd, 483 F. App'x 620 (2d Cir. 2012), cert. denied, 133 S. Ct. 931 (2013) (dismissing ADA discrimination claim for lack of notice of disability).

Defendants do not dispute that the first, second, and third elements are satisfied, but contend that there is insufficient evidence for Plaintiff to establish the notice component of the fourth element.[4]  An employer's awareness that a plaintiff suffered some injury does not establish that an employer had notice that the plaintiff was disabled.  See, e.g., Brown v. Connecticut, No. 08 Civ. 1478 (MRK), 2010 WL 2220580, at *17 (D. Conn. May 27, 2010) ("[i]t is well established in the ADA context that an employer's knowledge of an employee's limitations or symptoms does not provide proof that the employer knew that the condition or symptoms were disabling").  An employer may reasonably rely on the opinion of a medical

---

[4]     Defendants assume for the purpose of this motion for summary judgment that Plaintiff's alleged disabilities exist and are disabilities within the meaning of the ADA.

professional, such as a physician's statement declaring that a plaintiff may work without any restrictions.  See, e.g., Rodriguez v. Atria Sr. Living Group, Inc., 887 F. Supp. 2d 503, 511-12 (S.D.N.Y. 2012) (employer did not have notice of disability when plaintiff's physician cleared him for work without the restrictions that the plaintiff requested); see also Brown v. The Pension Bds., 488 F. Supp. 2d 395, 406 (S.D.N.Y. 2007) (employer lacked notice of disability when physician's note did not mention mental condition, notwithstanding the statement of plaintiff's mother that plaintiff was in a "breakdown condition").

Moreover, in order to establish an adverse employment action, a plaintiff must demonstrate that she suffered from a "materially adverse change in the terms, privileges, duration and conditions of employment."  Giraud v. Board of Educ., Newburgh Enlarged City School Dist., No. 12 Civ. 1842(ER), 2013 WL 3776242, at *6 (S.D.N.Y. Jul. 17, 2013) (quoting Treglia v. Town of Manlius, 313 F.3d 713, 720 (2d Cir. 2002)).  Examples of adverse employment action include "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [and] significantly diminished material responsibilities."  Freeman v. Dep't. of Environmental Protection, No. 10 Civ. 1555(NGG)(LB), 2013 WL 817221, at *4 (E.D.N.Y. Feb. 5, 2013), report and recommendation adopted by 2013 WL 801684 (E.D.N.Y. Mar. 5, 2013).

Here, it is undisputed that Plaintiff provided a note from her physician stating that she could work without restrictions upon her return from a two-week leave due to a back injury in June 2009.  (Def. 56.1 St. ¶¶ 31-32.)  Melendez testified that he did not know the reasons for Plaintiff's June 2009 leave, and Plaintiff does not dispute that.  (Id. ¶¶ 30-31.)  Plaintiff asserts that, notwithstanding her indications "on paper" that she "had no ailments" and could work without restrictions, Defendants had notice of her back-related disability after Plaintiff informed

HHA Coordinator Melendez and Supervising Nurse Ford in late December 2009 that she had re-injured her back when she was working with Patient DD, on her final assignment. (Pl. 56.1 St. ¶¶ 12, 45; Pl. Aff. ¶ 14; Hoey Reply Dec., Exh. 3 at 183-84.)  Nonetheless, in January 2010, Plaintiff submitted a pre-employment health exam form certifying that she had no"psychiatric or behavior disorder[s]," "back problems," or any of the other health issues enumerated on the form.  (Def. 56.1 St. ¶¶ 42-44.)

   The evidence thus indicates that Defendants may have been notified by Plaintiff that she suffered a back injury in late December 2009, and that they might have learned of her back injury in June 2009.  However, Plaintiff's doctor certified her as fit for unrestricted work and she herself disclaimed both mental and physical problems after the alleged "re-injury" in December.  Under these circumstances, the record cannot support a rational inference that Plaintiff's employer was on notice of her disability.  See, e.g., Watson, 2008 WL 793596, at *14, aff'd, 352 F. App'x 475 (granting summary judgment dismissing ADA claim where "defendant had no reason to know or even suspect that [the plaintiff] suffered an impairment that was so serious that it rose to the level of a disability within the meaning of the ADA, notwithstanding defendant's knowledge of plaintiff's injury. . . . The most defendant is chargeable with is knowledge that plaintiff suffered relatively mild injuries as a result of her fall with no suggestion of permanence"); see also Piccolo v. Wal-Mart, No. 11 Civ. 406S, 2012 WL 1965440, at *8 (W.D.N.Y. May 31, 2012) (employer lacked notice of disability where plaintiff "only informed [employer] that he was experiencing back and leg pain" and indicated that "he was suffering a relapse from the condition which had necessitated a 12-month leave of absence," but plaintiff also had previously submitted a physician's note stating that he had no work restrictions and requested additional work).  Accordingly, the Court finds that there is insufficient evidence to

establish that Defendants had notice that Plaintiff suffered from a disability within the meaning of the ADA due to back injuries.

With respect to her bipolar disorder, Plaintiff does not dispute Defendants' assertion that she never informed anyone at Morningside that she suffered from this illness. (Def. 56.1 St. ¶ 14.)  Accordingly, the Court also finds that there is insufficient evidence to support a finding that Defendants had notice of a disability due to Plaintiff's bipolar disorder.

There is a dispute as to whether Plaintiff was terminated by Morningside, or whether Plaintiff abandoned the job.  Defendant contends that Plaintiff failed to follow up for consultation and reassignment after the failed December 2009 assignment, while Plaintiff alleges that she repeatedly tried to contact Defendant and that her calls were not returned.  This dispute does not preclude summary judgment in Defendants' favor because, as explained above, there is no basis for an inference that Defendants were aware of Plaintiff's disability and, thus, no basis for any determination that any firing was motivated by disability-based animus.

Summary judgment is therefore granted for Defendants with respect to claims of discrimination based on Plaintiff's alleged disabilities concerning her back problems and bipolar disorder due to lack of notice and because Plaintiff has proffered no facts supporting any connection between her claims of disability and the termination of her employment.

<u>Discrimination Claim Based on Failure to Accommodate</u>

For a plaintiff to establish a <u>prima</u> <u>facie</u> claim under the ADA based on failure to provide a reasonable accommodation, a plaintiff must demonstrate that:

> (1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable

accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.

McMillan, 711 F.3d at 125-26 (quoting McBride, 583 F.3d at 97). As explained above, there is no basis for a rational inference that Defendants knew of Plaintiff's alleged disabilities. Thus, Plaintiff cannot satisfy the second element of her ADA-based claim. Moreover, Plaintiff does not dispute that she never requested any accommodation from the Defendants. (Def. 56.1 St. ¶¶ 14, 33.) The Court grants summary judgment dismissing Plaintiff's ADA claim that Defendants failed to accommodate her disability.


Claim of Retaliation for Complaining About Disability

Plaintiff alleges in her Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, for the first time, that Defendants retaliated against her for complaining about her back problems in violation of Title VII. A party may not assert new arguments or claims for the first time in opposing summary judgment. See Davidson v. Kyle, No. 01 Civ. 706S, 2004 WL 941458, at *9 (W.D.N.Y. Mar. 30, 2004). In any event, the new claim of retaliation for complaining about her back disability fails, because as explained above, Plaintiff has failed to proffer evidence of notice to the employer of that disability. The Court therefore grants summary judgment dismissing Plaintiff's claim of retaliation for complaining about her back disability.


Title VII Religious Discrimination Claims

Plaintiff further alleges that Defendants discriminated against her by terminating her on the basis of her religion and by failing to accommodate her religion by exposing her to

behaviors offensive to her religion, in violation of Title VII of the Civil Rights Act of 1964.  "As a precondition to filing a Title VII claim in federal court, a plaintiff must first pursue available administrative remedies and file a timely complaint with the EEOC."  Deravin v. Kerik, 335 F.3d 195, 200 (2d Cir. 2003).  If a plaintiff did not assert certain claims in an EEOC charge, the plaintiff may only assert those claims "in a federal action if they are reasonably related to those that were [timely] filed with the agency."  Jordan v. Forfeiture Support Associates, No. 11 Civ. 3001 (KAM)(JO), 2013 WL 828496, at *12-13 (E.D.N.Y. Mar. 5, 2013) (citing Roff v. Low Surgical & Med. Supply, Inc., No. 03-CV-3655, 2004 WL 5544995, at *2 (E.D.N.Y. May 11, 2004)).  "A claim is considered reasonably related if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made."  Id.  (internal quotation marks and citations omitted).

Once a plaintiff has exhausted his or her administrative remedies, to establish a religious discrimination claim pursuant to Title VII, a "plaintiff must withstand the three-part burden-shifting laid out by McDonnell Douglas," similar to the framework for an ADA claim. Yoselovsky v. Associated Press, 917 F. Supp. 2d 262, 273 (S.D.N.Y. 2013) (citing McPherson v. N.Y.C. Dept. of Educ., 457 F.3d 211, 215 (2d Cir.2006)).  To establish a prima facie case of religious discrimination based on an adverse employment action such as termination, a plaintiff must demonstrate that:

> (a) [s]he was within the protected class; (b) [s]he was qualified for the position [s]he held; (c) [s]he was subjected to an adverse employment decision or discharge; and (d) the adverse action occurred under circumstances giving rise to an inference of discrimination.

Yoselovsky, 917 F. Supp. 2d at 273 (citations omitted).  If a plaintiff can establish a prima facie case, "the burden then shifts to the defendant to articulate a legitimate, non-discriminatory

reason for the employment decision." Yoselovsky, 917 F. Supp. 2d at 274 (quoting Sharpe v.

MCI Communications Services, Inc., 684 F. Supp. 2d 394, 401 (S.D.N.Y. 2010)).  If the

defendant can provide a legitimate, non-discriminatory reason, then the burden shifts back to the

"plaintiff to prove not only that the proffered nondiscriminatory reason was pretextual, but also

that the defendant discriminated against the plaintiff."  Yoselovsky, 917 F. Supp. 2d at 274

(citing Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 93-94 (2d Cir. 2001)).

Likewise, for employees to establish a prima facie case of religious

discrimination based on failure to provide reasonable accommodation, they must demonstrate

that:

> (1) they held a bona fide religious belief conflicting with an employment
> requirement; (2) they informed their employers of this belief; and (3) they were
> disciplined for failure to comply with the conflicting employment requirement.

Baker v. The Home Depot, 445 F.3d 541, 546 (2d Cir. 2006) (quoting Knight v. Conn. Dept. of

Pub. Health, 275 F.3d 156, 167 (2d Cir. 2001)).  If an employee establishes a prima facie case,

the employer "must offer [the employee] a reasonable accommodation, unless doing so would

cause the employer to suffer an undue hardship."  Id. at 546 (quoting Cosme v. Henderson, 287

F.3d 152, 158 (2d Cir. 2002)).

In the charge that she filed with the EEOC and the New York State Division of

Human Rights, Plaintiff claimed discrimination only on the basis of race and disability and did

not make any factual allegations reasonably related to religious discrimination.  (Def. 56.1 St. ¶¶

18, 60; Hoey Dec., Exh. 4.)  Plaintiff thus fails to exhaust her administrative remedies with

respect to her religious discrimination claim, which must be dismissed for that reason alone.

Defendants further argue that Plaintiff's claims fail on substantive grounds.  In

terms of the claim that she was terminated on the basis of her religion, even assuming that

Plaintiff was terminated, Defendants argue – and Plaintiff does not dispute – that there is no evidence in the record to indicate that it was due to religious discrimination.  Plaintiff testified that she believed Morningside hired her because she was a Christian, and also testified that no one at Morningside made any negative comments to her about her religion.  (Def. 56.1 St. ¶¶ 16-17.)  With respect to the claim that Defendants failed to accommodate by exposing her to behavior in a patient's home that was offensive to Plaintiff's religious beliefs (Plaintiff said that people were "getting high" and "used profanity"), it is also undisputed that, once Plaintiff complained to Melendez, her request to be reassigned was granted.  (Def. 56.1 St. ¶¶ 36-37.) The Court finds that there is insufficient evidence to support a religious discrimination claim based on adverse employment action and failure to provide reasonable accommodation.

Accordingly, the Court grants summary judgment dismissing all of Plaintiff's religious discrimination claims pursuant to Title VII on both procedural and substantive grounds.

Claims of Retaliation for Complaining About Unpaid Wages

Plaintiff also alleges that Defendants retaliated against her by terminating her when she complained about unpaid wages, which the parties interpret as being in violation of the anti-retaliation provision of the FLSA, 29 U.S.C. § 215(a)(3), and the New York Labor Law Section 215.[5]  Both claims are subject to analysis under the McDonnell Douglas burden-shifting framework.  Esmilla v. Cosmopolitan Club, No. 09 Civ. 10169 (DF), 2013 WL 1313771, at *6, n.7 (S.D.N.Y. Mar. 26, 2013); see also Kassman v. KPMG LLP, No. 11 Civ. 3743 (JMF), 925 F.

---

[5]     As explained previously, the Complaint does not clearly indicate the statutes under which Plaintiff asserts her claim of retaliation for complaining about unpaid wages, but all parties appear to assume that the claim is asserted under both the FLSA and the New York Labor Law.

Supp. 2d 453,472 (S.D.N.Y. Feb. 7, 2013).  To establish a <u>prima</u> <u>facie</u> case, a plaintiff must

show:

> (1) participation in protected activity known to the defendant, like the filing of a FLSA lawsuit; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action

<u>Kassman</u>, 925 F. Supp. 2d at 472 (citing <u>Mullins v. City of N.Y.</u>, 626 F.3d 47, 53 (2d Cir.

2010)).


### Fair Labor Standards Act

To be considered "protected activity" under the FLSA, a plaintiff must have made

an official complaint to the appropriate government entity, and not merely to her employer.  <u>See</u>

<u>Lambert v. Genessee Hosp.</u>, 10 F. 3d 46, 55 (2d Cir. 1993), <u>abrogated</u> <u>on</u> <u>other</u> <u>grounds</u> <u>by</u>

<u>Kasten v. Saint-Gobain Performance Plastics Corp.</u>, 131 S. Ct. 1325, 1336 (2011); <u>see</u> <u>also</u>

<u>Hyunmi Son v. Reina Bijoux, Inc.</u>, 823 F. Supp. 2d 238, 244 (S.D.N.Y. 2011) ("the Second

Circuit's rule holding that complaints to employers do not qualify as a protected activity controls

– the FLSA applies only to 'retaliation for filing formal complaints, instituting a proceeding, or

testifying, but does not encompass complaints made to a supervisor'") (quoting <u>Lambert</u>, 10

F.3d at 55); <u>Neviaser v. Mazel Tec, Inc.</u>, No. 12 Civ. 48, 2012 WL 3028464, at *2 (D. Vt. Jul.

25, 2012) ("[T]he Court holds the holding of <u>Lambert</u> – that complaints to supervisors do not

suffice as a protected activity – is controlling"); <u>Ryder v. Platon</u>, No. 11 Civ. 4292 (JFB)(ARL),

2012 WL 2317772, at *7-8 (E.D.N.Y. Jun. 19, 2012) ("because there is no allegation in the

amended complaint that plaintiff lodged a complaint, oral or written, to a proper government

authority, the retaliation claim under the FLSA must be dismissed").  Here, Plaintiff complained

only to her employer about her unpaid wages.  (Def. 56.1 St. ¶¶ 46-49, 59.)  Because there is no

evidence in the record indicating that Plaintiff made any complaint to a government entity such

as the U.S. Department of Labor, the Court grants summary judgment dismissing all claims

based on unpaid wages to the extent that Plaintiff intended to bring them under the FLSA.


New York Labor Law

As all federal causes of action have been dismissed, the Court declines to exercise

supplemental jurisdiction over Plaintiff's state law claims under New York Labor Law Section

215 and dismisses these claims without prejudice to re-filing in state court.  See 28 U.S.C.A.

§ 1367(c)(3); Town of West Hartford v. Operation Rescue, 915 F.2d 92, 104 (2d Cir. 1990) ("it

is well settled that if the federal claims are dismissed before trial, even though not insubstantial

in a jurisdictional sense, the state claims should be dismissed as well") (internal quotations and

citations omitted).


CONCLUSION

For the foregoing reasons, the Court grants the Defendants' motion for summary

judgment dismissing all of Plaintiff's ADA, Title VII, and FLSA claims against Defendants.

The Court declines to exercise supplemental jurisdictions of Plaintiff's state law claims.

Because the Court has dismissed all of the claims, it need not consider arguments with respect to

whether or not Defendant Aging in America employed Plaintiff.  This Memorandum Opinion

and Order resolves docket entries 81 and 90.  The Clerk of Court is hereby directed to enter

judgment for Defendants and to close this case.

SO ORDERED.

Dated: New York, New York
        February 25, 2014

_____
                /S
LAURA TAYLOR SWAIN
United States District Judge